IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KEVIN DALE TEEL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:17-CV-85-Z |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DISMISS MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE,
OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

Before the Court is the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* filed by petitioner KEVIN DALE TEEL challenging the constitutional legality or validity of his federal court sentence.[1]  For the reasons set forth below, petitioner's motion should be DISMISSED.

I.
BACKGROUND/ PROCEDURAL HISTORY

On April 8, 2015, petitioner pleaded guilty to Count Three of a Superseding Indictment alleging the Class C Felony offense of Distribution of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  *United States v. Teel*, No. 2:14-CR-85(01) [ECF 60].  Count Three alleged petitioner committed the distribution of a controlled substance offense on or about September 17, 2014, on which date petitioner was 37 years old.  [ECF 41; 71-1 at 1-2].

A Presentence Report (PSR) was prepared for petitioner on June 3, 2015.  [ECF 71-1].

---

[1]Petitioner does not challenge his conviction of the federal criminal offense with which he was charged.

Under the section describing *The Offense Conduct*, the PSR noted, in paragraph 17, that petitioner

had:

> [T]wo prior felony convictions which are controlled substance offenses[2]:  Delivery of a Controlled Substance, Case No. 19529-A, 47th District Court of Randall County, Canyon, Texas;[3] and Delivery of a Controlled Substance, Case No. 22647-A, 47th District Court of Randall County, Canyon, Texas.

[ECF 71-1 at 6]. After attributing a Base Offense Level of 30 without any adjustments (resulting

in an Adjusted Offense Level of 30), the PSR then noted:

> **Chapter Four Enhancement:**  Pursuant to USSG §4B1.1(a)(l), the defendant is a career offender if (1) he was at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The PSR then specifically found:

> 1.    petitioner's offense of conviction, to wit:  Distribution of Methamphetamine, was a controlled substance offense, and
>
> 2.    petitioner had two (2) prior felony convictions which were controlled substance offenses.

The PSR then noted:

> According to USSG §4B1.l(b)(1), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.  Pursuant to USSG §4Bl.1(b)(3), the offense level is 32 if the statutory maximum sentence is 20 years or more, but less than 25 years imprisonment.

---

[2]USSG § 4B1.2 defines the term "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

[3]The undersigned notes that in the subsequent *Defendant's Criminal History* section of the PSR, the offense/conviction in Case No. 19,529-A is referred to as a "Possession of a Controlled Substance with Intent to Deliver" offense/conviction rather than a "Delivery of a Controlled Substance" offense/conviction as referenced in this paragraph.  Possession of a Controlled Substance with Intent to Deliver, however, is an alternative means by which to commit a Delivery offense.  *See* Texas Health and Safety Code § 481.112(a), (d).

[*Id.* at 7]. As petitioner's statutory maximum sentence for Distribution of Methamphetamine was 20 years imprisonment, *see* 21 U.S.C. § 841(B)(1)(C), petitioner's Adjusted Offense Level of 30 was upwardly adjusted or enhanced to 32. After providing for a 3-level decrease for petitioner's Acceptance of Responsibility, the PSR determined the Total Offense Level to be 29. [*Id.* at 8].

In the section detailing *The Defendant's Criminal History*, the PSR noted, *inter alia*, petitioner's prior state felony convictions involving controlled substances:

| | | |
|---|---|---|
| Possession of a Controlled Substance<br>July 18, 2008 | No. 19194-A | 47th District Court<br>Randall County, TX |
| Possession of a Controlled Substance<br>With Intent to Deliver[4]<br>July 18, 2008 | No. 19529-A | 47th District Court<br>Randall County, TX |
| Delivery of a Controlled Substance<br>May 10, 2012 | No. 22647-A | 47th District Court<br>Randall County, TX |

[*Id.* at 10-11]. Petitioner's cumulative criminal convictions resulted in a Criminal History Score of 15; however, because petitioner committed his current federal offense while on parole in three (3) of his state court cases, an additional two (2) points were added for a Total Criminal History Score of 17. The PSR, noting petitioner was a career offender, thus found petitioner had a Criminal History Category of VI. [*Id.* at 12]. Based upon a Total Offense Level of 29 and a Criminal History Category of VI, the PSR found petitioner's advisory Guideline Imprisonment Range was 151 - 188 months. [*Id.* at 16]. Petitioner did not object to the calculations of the proposed guidelines contained in the PSR. [ECF 75].

On July 17, 2015, the United States District Judge held petitioner's sentencing hearing during which petitioner delivered a sincere allocution and defense counsel requested the Court

---

[4]The undersigned again notes paragraph 17 of the previous *Offense Conduct* section of the PSR references Case No. 19,529-A as a "Delivery of a Controlled Substance" offense/conviction rather than as a "Possession of a Controlled Substance with Intent to Deliver" offense/conviction as referenced in this section. Again, Possession with Intent to Deliver a Controlled Substance is simply another means by which to commit a Delivery offense under Texas Health and Safety Code § 481.112(a), (d).

sentence petitioner at the low end of the guidelines and recommend petitioner be placed in a residential drug treatment program.  [ECF 85, 92 at 8].  The District Judge then sentenced petitioner to a term of 188 months imprisonment, a sentence at the very top of the advisory guideline range, and ordered such sentence to run consecutive to any sentences imposed in his state cases where his parole was revoked.  [ECF 92 at 8-9].  The Court explained the 188-month sentence was imposed because petitioner continued to possess drugs and weapons after serving several prior terms of incarceration for drug-related charges and continued to pose a danger to society.  [ECF 88, 92 at 10].  The Court entered a corresponding Judgment that same date.  [ECF 87].  Petitioner did not directly appeal his conviction or sentence to the United States Court of Appeals for the Fifth Circuit.

On June 23, 2016, almost a year after petitioner's sentencing, the United States Supreme Court decided *Mathis v. United States*, 136 S.Ct. 2243 (2016).  In *Mathis*, a case heard on direct appeal to resolve a split among the circuit courts, the Supreme Court addressed how lower courts should determine whether a defendant's past offense/conviction qualifies as a predicate offense to trigger imposition of an enhanced sentence under the Armed Career Criminal Act (ACCA).[5] Specifically at issue was the consideration of a defendant's prior conviction "under a statute that lists multiple, alternative means of satisfying one (or more) of its elements."  The *Mathis* Court reaffirmed that even in such instances, courts must use the "general rule" of comparing the "elements of the crime of conviction with the elements of the 'generic' version of the listed offense" to determine whether a prior conviction qualifies as an ACCA predicate.  The Court noted that "[f]or more than 25 years, [the Court's] decisions have held that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the

---

[5]The ACCA, 18 U.S.C. § 924(e), imposes a 15-year mandatory minimum sentence on certain federal defendants who have three (3) prior convictions for a "violent felony."

generic offense."  The Court specifically declined to make an "exception to that rule" for prior convictions under "various means" statutes, explaining the "elements-focused rule" for applying the ACCA, in effect for more than 25 years, does not "change" simply because a criminal statute happens to list alternative means of commission.  In conclusion, the Court confirmed lower courts must adhere to an "elements-only inquiry" and that if the elements of the prior offense/crime of conviction are broader than those of the generic offense listed under the ACCA, then the defendant's sentence cannot be enhanced under the ACCA.  Applying the "long time" existing law, *i.e.*, "the elements-based approach," to analyze the statute at issue in *Mathis*, the Court concluded the defendant's prior offense/conviction did not qualify as predicate offense under the ACCA and, thus, did not "give rise to an ACCA [enhanced] sentence."  *Id*. at 2257.

On August 11, 2016, in *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), the United States Court of Appeals for the Fifth Circuit, in reviewing a case on direct appeal, extended the *Mathis* ruling addressing sentence enhancement under the ACCA to the career offender provision in the Sentencing Guidelines allowing a 2-level increase of the offense level where a defendant has at least two prior felony convictions of a controlled substance offense, USSG §4B1.1.  Specifically, the Fifth Circuit held an "elements-only inquiry" must also be used to determine whether a state offense that provides alternative ways of satisfying a single element qualifies as a predicate offense under the career offender provision.  Utilizing the elements-only approach, the Fifth Circuit found the "delivery" element of the state drug-related offense of Delivery of a Controlled Substance under section 481.112(a) of the Texas Health and Safety Code (TH&SC) criminalizes a "greater swath of conduct" than the elements of the relevant Guidelines offense.[6] *Id*. at 576.  Consequently, the court held the Texas offense of Delivery of a Controlled Substance

---

[6]The court noted the "delivery" element of the state drug-related offense could be satisfied by an offer to sell, and that an offer to sell is not included under the Guidelines definition of a "controlled substance offense."

does not qualify as a predicate "controlled substance offense" under the career offender provision of the federal sentencing guidelines. *Id.* at 576-77. The appellate court thus found the sentencing court erred in finding the defendant was a career offender, thereby increasing his offense level by two (2) levels, vacated the defendant's sentence and remanded the case to the district court for resentencing without the 2-level increase.

On January 18, 2017, in *United States v. Tanksley*, 848 F.3d 347 (5th Cir.), *supplemented by* 854 F.3d 284 (5th Cir. 2017), the Fifth Circuit, in reviewing the case on direct appeal, found the "elements-only inquiry" mandated in *Mathis* must be applied to section 481.112(a) of the TH&SC as a whole in determining whether a state drug-related offense qualifies as a "controlled substance offense" under the Sentencing Guidelines. Citing the holding in *Hinkle* that section 481.112(a) "'criminalizes a 'greater swath of conduct than the elements of the relevant [Guidelines] offense,'" the court held the Texas offense of Possession with Intent to Deliver a Controlled Substance under that section does not qualify as a "controlled substance offense" under the Sentencing Guidelines so as to qualify as a predicate offense under the career offender provision, USSG §4B1.1. *Id.* at 352 (*quoting Hinkle*, 832 F.3d at 576). The court further found that although the defendant was sentenced at the bottom of the guidelines, it could not say with the requisite certainty that the district court, in imposing sentence, was not influenced in any way by the erroneously calculated guideline range. The appellate court thus found the sentencing court erred in finding the defendant was a career offender, thereby increasing his offense level by two (2) levels, vacated the defendant's sentence and remanded the case to the district court for resentencing. *Id*. at 353.

On April 29, 2017, petitioner purportedly placed the instant section 2255 motion in the prison mailing system. On May 4, 2017, the Court received petitioner's motion, filed it of record, and opened this collateral review proceeding. *Teel v. United States*, 2:17-CV-85 [ECF 3, 4]. On

June 25, 2017, the Government filed its response in opposition to petitioner's motion.  [ECF 7].

On August 31, 2017, petitioner filed a reply to the Government's response.  [ECF 9].

On July 30, 2019, petitioner filed, in his criminal case, a motion to reduce sentence under the First Step Act.  *United States v. Teel*, 2:14-CR-85 [ECF 99].  On December 5, 2019, petitioner's motion was denied due to his ineligibility for re-sentencing under that Act.  [ECF 100].

## II.
## PETITIONER'S ALLEGATIONS

In his motion to vacate and supporting memorandum, petitioner contends his sentence is in violation of the Constitution or laws of the United States for the following reasons:

1.   The 2-level increase to his offense level for being a career offender was improper because his state felony convictions for Possession of a Controlled Substance with Intent to Deliver and for Delivery of a Controlled Substance no longer qualify as "controlled substance offense[s]" to justify application of the Sentencing Guideline provisions governing career offender determinations; and

2.   Petitioner is now actually innocent of being a career offender.

[ECF 3 at 4-6; 4].  Petitioner argues his 188-month sentence, a sentence under the statutory maximum, is now unconstitutional.

In his motion, petitioner advises he has not previously presented the above grounds in federal court because the law in effect when he was sentenced July 17, 2015 held that his Texas convictions for Possession with Intent to Deliver and Delivery of a Controlled Substance were appropriate predicate convictions for the career offender designation.  Petitioner argues the law governing what qualifies as a predicate conviction for the career offender designation changed on June 23, 2016 when the Supreme Court handed down its decision in *Mathis*.  Petitioner argues that under *Mathis*, *Hinkle* and *Tanksley*, his prior state drug-related convictions no longer qualify as "controlled substance offense[s]" under the Guidelines and, therefore, were improperly used to

increase his offense level by two (2) levels as a career offender.  Petitioner thus concludes his guideline sentencing range was miscalculated, arguing that without the career offender enhancement, the advisory sentencing range would have been much lower and, consequently, his sentence necessarily would have been much less.  Petitioner requests the Court vacate his sentence and re-sentence him without the 2-level increase to his offense level for being a career offender.

### III.
### RESPONSIVE PLEADINGS

In its June 25, 2017 response to petitioner's motion to vacate, the Government asserts petitioner's motion should be dismissed (1) as time barred; (2) because his claims are non-cognizable under section 2255 collateral review; and/or (3) because his claims are procedurally barred.  [ECF 7].

In his August 31, 2017 reply to the Government's response, petitioner argues his motion to vacate is not time barred due to a later start date of the limitation period and/or after applying equitable tolling; or, if time barred, his claim of actual innocence can be applied to his claim of noncapital sentencing error to excuse his procedural default.  Petitioner also attempts to assert a new claim of ineffective assistance of trial counsel for failing to object to the PSR career offender designation on the basis that his prior drug delivery convictions were not controlled substance offenses for purposes of the Guidelines career offender provisions, and/or for failing to raise such argument on direct appeal of his sentence.  [ECF 9].

### IV.
### CLAIMS ARE NON-COGNIZABLE[7]

After a defendant has been convicted and exhausted or waived any right to appeal, "a court

---

[7]The undersigned addresses the issues raised by the Government in an alternative order.

is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). A motion brought pursuant to 28 U.S.C. § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). A prisoner may only move to vacate, set aside, or correct a sentence under section 2255 on the following bases: (1) the judgment was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the judgment; (3) the sentence exceeds the statutory maximum sentence; or (4) the judgment or sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral attack of a conviction thus limits a movant's allegations to those of constitutional or jurisdictional magnitude. *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Accordingly, relief under section 2255 is reserved for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994) (*quoting United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir.1992) (per curiam)).

Petitioner does not cite the Court to a specific constitutional provision or law of the United States, or identify a constitutional right that has allegedly been violated by the imposition and continuance of his sentence. Even so, the undersigned will assume, *arguendo*, that petitioner is asserting his sentence is now improper under federal case law, *viz.*, *Mathis*, a Supreme Court case heard on direct appeal and solely to resolve a circuit split and create a unified interpretation for applying a federal statute, in addition to Fifth Circuit cases applying the Supreme Court's unified interpretation to a provision of the United States Sentencing Guidelines, and that the continuation of his sentence violates his constitutional right to due process.

The United States Supreme Court delivered *Mathis* <u>after</u> petitioner's conviction became

final upon the expiration of time for a direct appeal.  To determine if a decision of the Supreme Court is applied retroactively, the Court utilizes the standard set forth in *Teague v. Lane*, 489 U.S. 288, 301 (1989).  Under *Teague*, a decision of the high court is <u>only</u> applied retroactively if it creates a new watershed rule of criminal procedure that enhances accuracy and is necessary to the fundamental fairness of the criminal proceeding.  *Id*. at 311-13.  Under *Teague*, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."  *Id*.  Therefore, in sum, a Supreme Court decision is applied retroactively on collateral review only if it announces a new rule of constitutional law, the rule is substantive, and if the result was not dictated by precedent existing at the time the defendant's conviction became final.[8]

As noted above, the Supreme Court explicitly stated in *Mathis* that it was not announcing a "new rule" and that its decision was dictated by decades-old precedent.  *Mathis*, 136 S.Ct. at 2257.  Applying the *Teague* standard, the undersigned finds *Mathis* did not announce a new rule of constitutional law that has been made retroactive to cases on collateral review.  *Cf. In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016) (*per curiam*) (denying authorization to file a successive 2255 motion because *Mathis* did not set forth a new rule of constitutional law that has been made retroactive to cases on collateral review).  Moreover, neither *Hinkle* nor *Tanksley*, decisions of the Fifth Circuit intermediate appellate court, are substantive decisions of the United States Supreme Court having retroactive effect to cases on collateral review.  *See Welch v. United States*, 136 S.Ct. 1257, 1265 (2016).

District courts throughout this circuit have repeatedly and consistently held that the

---

[8]Under *Teague*, new rules may also be applied in collateral proceedings if the new rule places an entire category of primary conduct beyond the reach of criminal law or prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense.  *Teague*, 489 U.S. at 311.  However, this exception has no application here.

Supreme Court's decision in *Mathis* did not set forth a new rule of constitutional law that applies retroactively to cases on collateral review, and also that neither *Hinkle* nor *Tanksley*, decisions not delivered by the Supreme Court, provide retroactive relief.  *See Easter v. United States*, 2019 WL 7500463 (N.D. Tex. 2019); *Long-Rockey v. United States*, 2019 WL 1793142 (N.D. Tex. 2019); *Rios v. United States*, 2018 WL 6329696 (N.D. Tex. 2018); *Dean v. United States*, 2018 WL 7288135 (E.D. Tex. 2018); *Alanis-Garza v. United States*, 2018 WL 3801786 (S.D. Tex. 2018) (neither *Mathis* nor *Hinkle* apply retroactively to cases on collateral review); *Lockhart v. United States*, 2018 WL 3040584 (W.D. Tex. 2018) (collecting cases holding that "Mathis did not set forth a new rule of constitutional law that has been made retroactive to cases on collateral review"); *Milan v. United States*, 2017 WL 535599 (N.D. Tex. 2017) ("*Mathis* did not set forth a new rule of constitutional law that has been made retroactive to cases on collateral review."); *Washington v. United States*, 2017 WL 2930939 (W.D. Tex. 2017) ("the Supreme Court clearly indicated in *Mathis* that it was not announcing a new rule and its decision was dictated by prior precedent.").

As petitioner's claims are not based on a retroactively applicable Supreme Court decision asserting a new rule of constitutional law, his claims in this 2255 proceeding merely constitute a challenge to his sentencing guideline calculations.  The Fifth Circuit distinguishes direct appeals from section 2255 motions and has historically and consistently held technical application of the Sentencing Guidelines does not raise an issue of constitutional dimension for purposes of section 2255.[9]  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (misapplication of the

---

[9]Sentencing a defendant in light of an erroneous application of a sentencing guideline does not alter the statutory boundaries for sentencing for the crime.  It results in incorrect advice to the sentencing court regarding the recommended range of punishment, but it does not authorize the Court to impose an otherwise inapplicable statutory mandatory minimum sentence or a higher than otherwise applicable statutory maximum, as is true under the Armed Career Criminal Act, 18 U.S.C, § 924(e), with respect to comparable error.  *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (explaining that the Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress").  Because a guideline provision cannot "mandate or authorize any sentence," *see Welch*, 136 S. Ct. at 1265, an erroneous guideline calculation does not alter the range of sentencing options available to the court.

Guidelines is not a constitutional issue cognizable under section 2255); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Petitioner's claims of misapplication of the Guidelines are not cognizable on section 2255 collateral review.  Even if a sentencing court errs in calculating an advisory sentencing range – including incorrectly labeling a defendant as a career offender under the guidelines – the claim is not cognizable on collateral review.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (rejecting a challenge to a career offender designation as not cognizable in section 2255 motions).  Petitioner's motion to vacate should be dismissed for failure to raise a claim cognizable on collateral review pursuant to a section 2255 motion.

Despite the fact that petitioner's claim is not cognizable in this collateral proceeding, the undersigned notes existing case law at the time of petitioner's sentencing allowed for the Texas offenses of Delivery of a Controlled Substance and Possession of a Controlled Substance with Intent to Deliver to qualify as "controlled substance offense[s]" under the Guidelines for purposes of the career offender provisions.  Consequently, petitioner's advisory guideline range and sentence were proper at the time of petitioner's sentencing.  The undersigned acknowledges that the interpretation of the law has subsequently changed and that the Texas offenses on which petitioner's career offender status was based no longer qualify as predicate offenses.  The undersigned further acknowledges that offenders sentenced post-*Hinkle* and *Tanksley* (or if sentenced prior to the issuance of those opinions but if pending on appeal when those opinions were issued) will not have prior section 481.112 delivery convictions qualify as predicate offenses for the Guideline's career offender provisions.  Here, however, there was no error, much less constitutional error, either at the time petitioner was sentenced or when his conviction became

final, in finding petitioner's prior delivery convictions qualified as predicate offenses for the Guidelines career offender provisions.

V.

<u>STATUTE OF LIMITATIONS</u>

In the event petitioner's claims are considered to be cognizable in a collateral proceeding, the undersigned also addresses the timeliness of petitioner's section 2255 motion. A 1-year period of limitation applies to a motion to vacate filed under section 2255. The limitation period runs from the latest of –

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In its response, the Government fully and accurately briefed statutory and case law regarding the 1-year statute of limitations for motions to vacate, including the various provisions governing the start of the limitation period, as well as the application of equitable tolling of the limitation period. The Government also set forth relevant dates in this case and analyzed the timeliness of petitioner's motion to vacate, specifically addressing any claims of a later date for a newly recognized right or for the discovery of facts supporting a claim presented.

VI.
FINALITY OF CONVICTION

By responding to Question 18 of the form motion to vacate, petitioner effectively acknowledges his judgment of conviction "became final over one year" before filing the instant motion.  Therefore, with regard to the finality of petitioner's conviction, the undersigned makes the following findings and/or conclusions:

1.    Petitioner was sentenced on July 17, 2015.  Petitioner did not directly appeal his conviction or sentence.

2.    Petitioner's judgment of conviction became final on **July 31, 2015** when the 14-day period for seeking direct appellate review of the conviction expired.  *See* Fed. R. App. Proc. 4(b)(1)(A)(i); *Clay v. United States*, 537 U.S. 522, 525, (2003); *United States v. Gamble*, 208 F.3d 536, 536-37 (5th Cir. 2000).

VII.
START OF THE LIMITATION PERIOD

The limitations period shall run from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review <u>unless</u> one of the circumstances set forth in 28 U.S.C § 2255(f) clearly applies and triggers a later begin date.

A.    Impediment to Filing – 2255(f)(2)

In his reply, petitioner states the "Federal Bureau of Prisons caused a governmental impediment that prevented [petitioner] from being able to timely file his claim by July 31, 2016." [ECF 9 at 3].  Petitioner attaches to his reply a copy of the BOP's internal policy "generally prohibit[ing] inmate possession of Pre-sentence Reports (PSRs)."  [ECF 9 at 12].  Petitioner appears to suggest the existence of this BOP policy prevented him from reviewing his PSR to determine which of his prior drug-related convictions were used as predicate offenses for his career offender designation.  Petitioner appears to contend, in turn, that the BOP policy thus prevented

him from filing the instant motion to vacate alleging the prior Texas convictions were improperly considered to be predicate controlled substance offenses. Petitioner appears to contend the impediment to his filing a motion to vacate was removed when he received hard copies of his state court judgments in March 2019. The undersigned construes petitioner to be arguing section 2255(f)(2) applies in this case to delay the start of the limitation period applicable to petitioner's motion to vacate.

The undersigned initially notes the existence of the BOP policy did not "impede" petitioner's filing of a motion to vacate. The policy, while not allowing an inmate to physically possess a PSR, advised that when an inmate receives a PSR through the mail, the Unit would store the documents and make them available to the inmate in a controlled setting. Any BOP prohibition on an inmate possessing a PSR did not prevent petitioner from reviewing a copy of his PSR. Moreover, the BOP internal policy did not constitute governmental "action" as contemplated by the statute, nor was such a safety and security policy in violation of the Constitution or laws of the United States. Maybe even more importantly, the mere existence of such policy did not prevent petitioner from filing a motion to vacate. In fact, the policy, which was the purported "impediment" preventing petitioner from filing his motion, was never removed, yet petitioner was still able to file his motion. Section 2255(f)(2) does not apply under the circumstances of this case to provide a later start date of the limitation period.

### B. Newly Recognized Right – 2255(f)(3)

Petitioner argues he filed his motion to vacate within one year of June 23, 2016, the date the *Mathis* opinion issued. The Court construes such statement to be an assertion that the statute of limitations began to run in this case, at the earliest, when the *Mathis* opinion issued on June 23, 2016. Petitioner also appears to argue the period may not have begun to run until August 11, 2016,

the date the Fifth Circuit issued its opinion in *Hinkle*, or even until January 18, 2017, the date the Fifth Circuit issued its *Tanksley* decision.  [ECF 3 at 10].

To the extent petitioner relies upon *Hinkle* and *Tanksley* as opinions setting forth a newly recognized right, the undersigned again notes these decisions were from the Fifth Circuit Court of Appeals, not the United States Supreme Court.  Section 2255(f)(3) applies only to claims relying on a rule or right "newly recognized by the Supreme Court."  Moreover, as addressed above, controlling precedent holds *Mathis* did not announce a new rule.  Therefore, for purposes of section 2255 statute of limitation provisions, the Supreme Court did not initially recognize a new right in *Mathis* and make such ruling retroactively applicable to cases on collateral review.  Therefore, Section 2255(f)(3) does not apply here.  *See Washington*, 2017 WL 2930939 at *3 ("to trigger the limitation period under § 2255(f)(3), the right [petitioner] relies on must have been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").  Consequently, petitioner cannot rely upon *Mathis* to delay, under section 2255(f)(3), the start of the one-year limitation period applicable to his motion to vacate.

Furthermore, *Hinkle* and *Tanksley* applied the *Mathis* holding on direct appeal rather than in collateral proceedings brought under section 2255.  Therefore, *Hinkle* and *Tanksley* offer no instruction for application in collateral proceedings.  *Hinkle* and *Tanksley* did not write new law, nor do they constitute retroactively applicable Supreme Court decisions.  As petitioner's *Mathis* claim is not cognizable on collateral review because *Mathis* is not retroactively applicable (*see* Section IV., *supra*), petitioner does not receive the additional time benefit of section 2255(f)(3).

C.  <u>Discovery Rule – 2255(f)(4)</u>

The one-year limitations period is calculated from "the date on which the <u>facts</u> supporting the claim or claims presented could have been discovered through the exercise of due diligence."

28 U.S.C. § 2255(f)(4) (emphasis added). To the extent, if any, petitioner argues the operative facts under section 2255(f)(4) include court rulings and the legal consequence of those rulings, he is mistaken. "[T]he issuance of a new court opinion is not a newly-discovered fact under section 2255(f)(4)." *Martinez v. United States*, 2014 WL 3361748 (N.D. Tex. 2014) (citing *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013)) (section 2255(f)(4) "is directed at the discovery of new facts, not newly discovered law"). Section 2255(f)(4) is not applicable to delay the start of the limitation period applicable to petitioner's motion to vacate.

## D.  Findings and Conclusions

With regard to the start of the 1-year limitation period, the undersigned makes the following findings and conclusions:

1.    The record does not reflect any unconstitutional "governmental action" impeded or prevented petitioner from filing a motion to vacate challenging his federal sentence.

2.    Petitioner's claims do not concern a new constitutional right recognized by the United States Supreme Court and made retroactive to cases on collateral review within the year prior to the filing of petitioner's motion.

3.    Petitioner's claims are not of such a nature that the factual predicate of the claims presented could not have been discovered, through the exercise of due diligence, until a date subsequent to the conclusion of petitioner's direct review of his conviction.

4.    The 1-year period of limitation in this case began on the date on which petitioner's judgment became final by the expiration of the time for seeking direct review under 28 U.S.C. § 2255(f)(1), that is **July 31, 2015**.

5.    Petitioner's motion to vacate was thus due on or before **July 31, 2016**, unless equitably tolled.

## VIII.
## EQUITABLE TOLLING

Equitable tolling "is applied restrictively" and "only in rare and exceptional

circumstances." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006); *See also Lambert v. U.S.*, 44 F.3d 296, 298 (5th Cir. 1995) ("The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable") (quoting *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 428 (1965)). Neither a prisoner's unfamiliarity with the law, nor his *pro se* status rises to the level of rare or exceptional circumstance that would warrant equitable tolling. *See United States v. Petty*, 530 F.3d 361, 365-366 (5th Cir. 2008) (lack of legal training, ignorance of the law, and *pro se* status are insufficient to equitably toll the statute of limitations).

In his motion to vacate and supporting memorandum, petitioner does not allege he is entitled to equitable tolling, nor does he provide any facts from which the Court can find that equitable tolling is warranted. In his reply to the Government's response, however, petitioner specifically argues he is entitled to equitable tolling from December 2015, when he first attempted to find out which of his prior state drug-related convictions were used as the predicate offenses for the career offender designation, to March 2017, when he finally received copies of the Judgments for said Texas convictions. As support, petitioner attaches a copy of a letter from his counselor at the Bureau of Prisons detailing the timeline of the attempts made by the counselor, petitioner and others to determine which Texas offenses/convictions were used as predicate offenses for the career offender designation. [ECF 9 at 10-11].

As set forth in detail above under Section I., the PSR clearly identified petitioner's Texas offense of delivery of and possession with intent to deliver a controlled substance utilized as predicate offenses for the career offender designation. Petitioner should certainly have been aware of his underlying convictions and, having reviewed the PSR prior to sentencing and sworn to its accuracy, should have been aware of which two of his three prior drug-related state convictions were used for his career offender designation. Moreover, petitioner's counselor advised he/she

reviewed petitioner's PSR (even though explaining he/she, as well as several others, could not determine which convictions were used for the career offender designation); therefore, a copy of the PSR appears to have been, at least to some extent, available for petitioner's review. The undersigned acknowledges that although petitioner, as well as several others, apparently were inexplicably unsuccessful in their varied attempts to discern which Texas offenses/convictions were used for the career offender designation, such fruitless, even if diligent, attempts do not, in and of themselves, constitute exceptional circumstances warranting equitable tolling. Moreover, petitioner could have sufficiently alerted the Court to his claims in a 2255 motion without obtaining or attaching copies of his Texas judgments of conviction. While the undersigned appreciates petitioner's goal of ensuring the accuracy of his pleadings, the factual circumstances of this case which were known to petitioner, even if not confirmed, were adequate for him to assert his claims to this Court. The time that elapsed while petitioner was awaiting receipt of copies of his judgments does not equitably toll the limitation period. The undersigned does not find extraordinary circumstances prevented petitioner from timely filing his 2255 motion. Petitioner has not carried his burden of establishing that equitable tolling is warranted in this case.

IX.
ACTUAL INNOCENCE

Petitioner alleges he is now "actually innocent" of being a career offender as a result of the previously discussed case law delivered after petitioner's conviction was final. The AEDPA's statute of limitations can be overcome by a showing of "actual innocence," *see McQuiggin v. Perkins*, 569 U.S. 383 (2013); however, the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

constitutional error." *Id*. at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Therefore, to establish an actual innocence gateway, a petitioner must present new, reliable evidence sufficient to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 386 (quoting *Schlup*, 513 U.S. at 329). Moreover, the term 'actual innocence' means factual, as opposed to legal, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence means that the person did not commit the crime. *See Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992). While a claim of actual innocence may provide "a gateway through which a petitioner may pass" when the statute of limitations has expired, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 569 U.S. at 386.

Despite pleading guilty, petitioner argues that the actual innocence doctrine should apply in the event this Court finds him without a remedy under section 2255. [ECF 4 at 3]. Petitioner argues not that he is actually innocent of the predicate drug offenses used to categorize him as a career offender and increase his offense level by two levels; rather, he asserts he is "factually innocent of the criteria needed to trigger the enhancement under USSG 4B2.2 Career Offender provisions…[and] if [he were] sentenced today pursuant to *Mathis, Hinkle*, and *Tanksley*, he would be sentenced to a sentence far less than 188 months." [ECF 4 at 3-6].

In *Dretke v. Haley*, 541 U.S. 386 (2004), the United States Supreme Court expressly declined to answer the question of whether the "actual innocence" exception to procedural default of constitutional claims applies to claims of noncapital sentencing errors. *Id*. at 393-94. Therefore, it is unclear whether the "actual innocence" exception may even be applied to a defaulted claim of a sentencing error in a noncapital proceeding, and the undersigned does not presume to know the answer to the question left open by the Supreme Court. *But cf. Batts v. United States*, 2017 WL

3701162 (N.D. Tex. 2017); *Denman v. United States*, 2016 WL 3752969 *2 (N.D. Tex. 2016) ("actual innocence jurisprudence 'does not apply to habeas claims based on actual innocence of a sentence.'").  Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding sentencing matters, petitioner has not demonstrated that, *at the time he was sentenced*, he was legally ineligible for the sentence imposed.  *See* Section IV., *supra*.  Thus, petitioner has not demonstrated that a fundamental miscarriage of justice – because he is actually innocent – will result from application of the procedural bar.

## X.
## FINAL FINDINGS AND CONCLUSIONS ON LIMITATIONS

The undersigned makes the following findings and conclusions:

1.    The one-year statutory limitation period in this case was not equitably tolled.

2.    Petitioner's motion to vacate, filed **April 29, 2017** when petitioner purportedly placed the motion in the prison mail system, was filed well over one (1) year **after** the expiration of the statute of limitations and **is time barred**.

3.    An "actual innocence" exception to the time bar is not applicable in this case.

4.    To the extent, if any, petitioner's claims are considered to be cognizable in this proceeding, *see* Section IV. *supra*, then petitioner's motion to vacate sentence should be dismissed as time barred.

## XI.
## CLAIMS ARE PROCEDURALLY BARRED

Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal.  *United States v. Stumpf*, 900 F.2d 843, 845 (5th Cir. 1990).  If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct

appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

As noted by the Government, petitioner's claims are procedurally barred because he failed to raise the substance of said claims on direct appeal. Petitioner could have raised the bases of his claim that his prior Texas convictions should not have qualified as controlled substance offense under the Guidelines for purposes of the career offender provisions without the aid of the subsequent supporting case law. "The Supreme Court has emphasized repeatedly that a 'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). However, it is well-settled that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982). The only other avenue, then, is for petitioner to show the error resulted in the "conviction of one who is actually innocent." Petitioner's claims, however, do not go to the validity of his conviction at all; rather, they only go toward his sentence. Consequently, he cannot make the requisite showing. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

In his reply to the Government's response, petitioner asserts trial counsel was deficient for failing to object to the career offender designation in light of the reasoning subsequently set forth in *Mathis*, *Hinkle* and *Tanksley*, and, therefore, he was denied the effective assistance of counsel. It is unclear whether petitioner is attempting to assert a new claim or is simply attempting to show cause for failing to raise the issue on direct appeal. Petitioner was advised by the Court in the

Order to Show Cause that the Court would not consider new claims asserted in his reply.  [ECF 5].  Even so, the undersigned notes the Fifth Circuit has held "there is no general duty on the part of defense counsel to anticipate changes in the law" (or changes in interpretations of the law) and that "[c]lairvoyance is not a required attribute for effective representation."  *United States v. Fields*, 575 F.3d 290, 294 (5th Cir. 2009).  Petitioner's counsel was not ineffective in light of the law and/or interpretation of the law at the time petitioner was sentenced.  Petitioner's claims, if considered cognizable in this collateral review proceeding and/or not time barred, are otherwise procedurally barred and should be dismissed.

XII.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* filed by petitioner KEVIN DALE TEEL be, in all things, DISMISSED.

XIII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to the petitioner by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED April 24, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).